NIXON PEABODY LLP
David. B. Ritchie (112018)
dritchie@nixonpeabody.com
Margarita Gevondyan (245536)
mgevondyan@nixonpeabody.com
200 Page Mill Road, Suite 200
Palo Alto, CA 94306-2022
Telephone:   (650) 320-7747
Facsimile:   (866) 294-6031

BARCELÓ & HARRISON, LLP
Reynaldo C. Barceló (199741)
rey@bhiplaw.com
2901 West Coast Hwy, Suite 200
Newport Beach, California 92663
Telephone:   (949) 340-9736
Facsimile:   (949) 258-5752

Attorneys for Plaintiff,
TMI PRODUCTS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TMI PRODUCTS, INC.,<br><br>            Plaintiff<br><br>    v.<br><br>AUDIOVOX CORPORATION and AUDIOVOX ELECTRONICS CORPORATION,<br><br>           Defendants | Case No.<br><br>CV09-01437 JFW (JCx)<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

COMPLAINT

1    For its complaint against Audiovox Corporation and Audiovox Electronics
2  Corporation (collectively, "Audiovox," or "Defendants"), Plaintiff TMI Products,
3  Inc. ("TMI") alleges as follows:

4                              **THE PARTIES**

5    1.    TMI is a corporation duly organized and existing under the laws of the
6  California, with its principal place of business at 1493 E. Bentley Drive, Corona,
7  California 92879.  TMI holds an exclusive license to U.S. Patent Nos. 7,040,697
8  ("the '697 patent") and 7,407,227 ("the '227 patent") (collectively, "the Patents in
9  Suit").  TMI's exclusive license includes the exclusive world-wide rights to
10  sublicense the '697 and '227 patents, and to enforce the '697 and '227 patents
11  against alleged infringers.

12    2.    Upon information and belief, Audiovox Corporation is a corporation
13  organized and existing under the laws of the State of Delaware, with its principal
14  place of business at 180 Marcus Boulevard, Hauppauge, New York.

15    3.    Upon information and belief, Audiovox Electronics Corporation is a
16  corporation organized and existing under the laws of the State of Delaware, with its
17  principal place of business at 180 Marcus Boulevard, Hauppauge, New York, and it
18  is a wholly owned subsidiary of Audiovox Corporation.

19                        **NATURE OF THE ACTION**

20    4.    In this civil action, TMI seeks damages and injunctive relief against
21  Defendants for acts of patent infringement in violation of the Patent Act of the
22  United States, 35 U.S.C. §§ 1 et seq.

23                      **JURISDICTION AND VENUE**

24    5.    This Court has subject matter jurisdiction pursuant to the provisions of
25  28 U.S.C. §§ 1331 and 1338(a), because this is an action for patent infringement
26  arising under the laws of the United States, including 35 U.S.C. §§ 1 et seq.

27    6.    Venue is proper under 28 U.S.C. §§ 1391(c) and 1400(b), in that the
28  acts and transactions complained of herein were conceived, carried out, made

1  effective, or had effect within the State of California and within this Judicial

2  District, among other places.

3     7.     On information and belief, Audiovox Corporation resides in this

4  Judicial District by virtue of its business activities in this Judicial District.  For

5  example, and without limitation, on information and belief, Audiovox Corporation

6  is licensed to do business in California by the California Secretary of State, and

7  Audiovox maintains a registered agent for service of process in this Judicial District

8  – namely, James Wohlberg, 16808 Marquardt Avenue, Cerritos, CA 90701.

9     8.     On information and belief, Audiovox Electronics Corporation resides in

10  this Judicial District by virtue of its business activities in this Judicial District.  For

11  example, and without limitation, on information and belief, Audiovox Electronics

12  Corporation is licensed to do business in California by the California Secretary of

13  State, and Audiovox maintains a registered agent for service of process in California

14  – namely, HIQ Corporate Services, Inc., 1903 21st St., Sacramento, CA 95811.

15     9.     On information and belief, Audiovox Corporation markets and sells,

16  throughout the United States and including in this Judicial District, headrest

17  mountable video systems through its wholly owned subsidiary, Audiovox

18  Electronics Corporation.  On information and belief, all profits from Audiovox

19  Electronics Corporation's sales of headrest mountable video systems flow to

20  Audiovox Corporation.

21     10.     On information and belief, based at least on the facts stated above, this

22  Court has personal jurisdiction over Defendants.

23                           **BACKGROUND**

24     11.     On May 9, 2006, the United States Patent & Trademark Office duly

25  and legally issued United States Letters Patent No. 7,040,697 ("the '697 patent"),

26  entitled "HEADREST HAVING AN INTEGRATED VIDEO SCREEN."  A true

27  and correct copy of the '697 Patent is attached as Exhibit A and incorporated herein

28  by reference.

12.     On August 5, 2008, the United States Patent & Trademark Office duly and legally issued United States Letters Patent No. 7,407,227 ("the '227 patent"), entitled "HEADREST HAVING AN INTEGRATED VIDEO SCREEN." A true and correct copy of the '227 Patent is attached as Exhibit B and incorporated herein by reference.

### FIRST CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 7,040,697)

13.     TMI incorporates herein by reference the allegations set forth in paragraphs 1-12 of this Complaint as though fully set forth herein.

14.     On information and belief, Calli Ventosa, Inc. and Tierra Vista Corp. are the joint legal owners by assignment of the '697 patent from Timely Innovations, LP, which is the original assignee listed on the front page of the '697 patent. TMI is the exclusive licensee of the '697 patent, having acquired from Calli Ventosa, Inc. and Tierra Vista Corp. substantially all rights in the '697 patent, including the exclusive world-wide right to sublicense the '697 patent and to enforce the '697 patent against any and all infringers.

15.     Defendants have directly infringed and continue to directly infringe the '697 Patent by making, using, selling, or offering for sale in or importing into the United States mobile video headrest systems that embody or otherwise practice one or more of the claims of the '697 Patent, such as, without limitation, products and systems marketed as the "Movies2Go Universal Headrest" and the "Advent Custom Headrest Systems."

16.     On information and belief, Defendants have indirectly infringed and continue to indirectly infringe the '697 Patent by actively inducing direct infringement by other persons who operate and/or use mobile video headrest systems such as, without limitation, products and systems marketed as the "Movies2Go Universal Headrest" and the "Advent Custom Headrest Systems," or otherwise practice one or more of the claims of the '697 Patent, when Defendants

- 4 -

1   had knowledge of the '697 Patent and knew or should have known that their actions
2   would induce direct infringement by others and intended that their actions would
3   induce direct infringement by others.

4   17.   On information and belief, Defendants have indirectly infringed and
5   continue to indirectly infringe the '697 Patent by contributory infringement by
6   providing non-staple articles of commerce to others for use in an infringing system
7   or method with respect to mobile video headrest systems such as, without limitation,
8   products and systems marketed as the "Movies2Go Universal Headrest" and the
9   "Advent Custom Headrest Systems," with knowledge of the '697 Patent and
10  knowledge that these non-staple articles of commerce are used as a material part of
11  the claimed inventions of the '697 Patent.

12  18.   On information and belief, Defendants will continue to infringe the
13  '697 Patent as alleged in this Complaint unless enjoined by this Court.

14  19.   On information and belief, Defendants' infringement of the '697 patent
15  is, has been, and continues to be willful and deliberate.

16  20.   As a direct and proximate result of Defendants' infringement of the
17  '697 patent, TMI has been and continues to be damaged in an amount yet to be
18  determined.

19  21.   Unless Defendants and their respective officers, agents, servants, and
20  employees, and all persons acting in concert with Defendants, are enjoined from
21  infringing the '697 patent, TMI will be greatly and irreparably harmed.

22  22.   By reason of the above acts, TMI is entitled to injunctive relief
23  enjoining and restraining Defendants, and their respective officers, agents, servants,
24  and employees, and all persons acting in concert with Defendants, from further
25  infringement of the '697 patent.

26
27  ///
28  ///

## SECOND CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 7,407,227)

23.   TMI incorporates herein by reference the allegations set forth in paragraphs 1-12 of this Complaint as though fully set forth herein.

24.   On information and belief, Calli Ventosa, Inc. and Tierra Vista Corp. are the joint legal owners by assignment of the '227 patent from Timely Innovations, LP, which is the original assignee listed on the front page of the '227 patent.  TMI is the exclusive licensee of the '227 patent, having acquired from Calli Ventosa, Inc. and Tierra Vista Corp. substantially all rights in the '227 patent, including the exclusive world-wide right to sublicense the '227 patent and to enforce the '227 patent against any and all infringers.

25.   Defendants have directly infringed and continue to directly infringe the '227 Patent by making, using, selling, or offering for sale in or importing into the United States mobile video headrest systems that embody or otherwise practice one or more of the claims of the '227 Patent, such as, without limitation, products and systems marketed as the "Movies2Go Universal Headrest" and the "Advent Custom Headrest Systems."

26.   On information and belief, Defendants have indirectly infringed and continue to indirectly infringe the '227 Patent by actively inducing direct infringement by other persons who operate and/or use mobile video headrest systems such as, without limitation, products and systems marketed as the "Movies2Go Universal Headrest" and the "Advent Custom Headrest Systems," or otherwise practice one or more of the claims of the '227 Patent, when Defendants had knowledge of the '227 Patent and knew or should have known that their actions would induce direct infringement by others and intended that their actions would induce direct infringement by others.

27.   On information and belief, Defendants have indirectly infringed and continue to indirectly infringe the '227 Patent by contributory infringement by

1  providing non-staple articles of commerce to others for use in an infringing system
2  or method with respect to mobile video headrest systems such as, without limitation,
3  products and systems marketed as the "Movies2Go Universal Headrest" and the
4  "Advent Custom Headrest Systems," with knowledge of the '227 Patent and
5  knowledge that these non-staple articles of commerce are used as a material part of
6  the claimed inventions of the '227 Patent.

7       28.   On information and belief, Defendants will continue to infringe the
8  '227 Patent as alleged in this Complaint unless enjoined by this Court.

9       29.   On information and belief, Defendants' infringement of the '227 patent
10 is, has been, and continues to be willful and deliberate.

11      30.   As a direct and proximate result of Defendants' infringement of the
12 '227 patent, TMI has been and continues to be damaged in an amount yet to be
13 determined.

14      31.   Unless Defendants and their respective officers, agents, servants, and
15 employees, and all persons acting in concert with Defendants, are enjoined from
16 infringing the '227 patent, TMI will be greatly and irreparably harmed.

17      32.   By reason of the above acts, TMI is entitled to injunctive relief
18 enjoining and restraining Defendants, and their respective officers, agents, servants,
19 and employees, and all persons acting in concert with Defendants, from further
20 infringement of the '227 patent.

21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## **PRAYER FOR RELIEF**

WHEREFORE, TMI prays for judgment against Defendants as follows:

1.     For a judicial determination and declaration that Defendants directly infringe United States Letters Patent Nos. 7,040,697 and 7,407,227 by making, using, offering to sell and/or selling mobile video headrest systems such as, without limitation, products and systems marketed as the "Movies2Go Universal Headrest" and the "Advent Custom Headrest Systems";

2.     For a judicial determination and declaration that Defendants induce direct infringement of United States Letters Patent Nos. 7,040,697 and 7,407,227;

3.     For a judicial determination and declaration that Defendants commit contributory infringement of United States Letters Patent Nos. 7,040,697 and 7,407,227;

4.     For a judicial determination and decree that Defendants' infringement of United States Letters Patent Nos. 7,040,697 and 7,407,227 is willful;

5.     For damages resulting from Defendants' past and present infringement of United States Letters Patent Nos. 7,040,697 and 7,407,227, and the trebling of such damages because of the willful and deliberate nature of its infringement;

6.     For injunctive relief against further infringement of United States Letters Patent Nos. 7,040,697 and 7,407,227 by Defendants, their respective officers, directors, shareholders, agents, servants, employees, and all other entities and individuals acting in concert with the enjoined entities or on their behalf;

7.     For a declaration that this is an exceptional case under 35 U.S.C. § 285 and for an award of attorneys' fees and costs in this action;

///
///
///
///
///

1    8.    For an assessment of prejudgment interest; and

2    9.    For such other and further relief as the Court may deem just and proper

3    under the circumstances.

4

5    Dated:  February 27, 2009          By: _____

6

7                                        David. B. Ritchie (112018)
                                         Margarita Gevondyan (245536)
8                                        NIXON PEABODY LLP
                                         200 Page Mill Road, Suite 200
9                                        Palo Alto, CA 94306-2022
                                         (650) 320-7747
10
                                         Reynaldo C. Barceló (199741)
11                                       BARCELÓ & HARRISON, LLP
                                         2901 West Coast Hwy, Suite 200
12                                       Newport Beach, CA 92663
                                         (949) 340-9736
13
                                         *Attorneys for Plaintiff, TMI Products, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2  **<u>DEMAND FOR JURY TRIAL</u>**

3      TMI hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of

4  Civil Procedure as to all issues in this lawsuit.

5

6  Dated:  February 27, 2009      By:

7

8                David. B. Ritchie (112018)
              Margarita Gevondyan (245536)

9                NIXON PEABODY LLP
              200 Page Mill Road, Suite 200

10               Palo Alto, CA 94306-2022
              (650) 320-7747

11               Reynaldo C. Barceló (199741)

12               BARCELO & HARRISON, LLP
              2901 West Coast Hwy, Suite 200

13               Newport Beach, CA 92663
              (949) 340-9736

14               *Attorneys for Plaintiff, TMI Products, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



US007040697B1

(12) **United States Patent**
Tuccinardi et al.

(10) Patent No.:     **US 7,040,697 B1**
(45) Date of Patent:           **May 9, 2006**

(54) **HEADREST HAVING AN INTEGRATED VIDEO SCREEN**

(75) Inventors: **Eugene M. Tuccinardi**, Temecula, CA
(US); **Ernesto R. Haack**, Perris, CA
(US); **Robert Murphy**, Lake Elsinore,
CA (US); **Frank Barrese**, Temecula,
CA (US); **Roel C. Espina**, Loma Linda,
CA (US); **Jon A. Molo**, Ontario, CA
(US); **Theo Zoetemelk**, Riverside, CA
(US)

(73) Assignee: **Timely Innovations, LP**, Temecula, CA
(US)

( * ) Notice:     Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/395,870**

(22) Filed:     **Mar. 20, 2003**

(51) **Int. Cl.**
*A47C 31/00*     (2006.01)
*A47C 7/62*     (2006.01)
(52) **U.S. Cl.** ............................... 297/217.3; 297/188.04
(58) **Field of Classification Search** ............ 297/217.3,
297/188.04, 188.07, 185; 411/510; 312/242,
312/245
See application file for complete search history.

(56)             **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,004,815 A | * | 10/1961 | O'Kain et al. | .............. 312/242 |
| 4,584,603 A | | 4/1986 | Harrison | |
| 4,635,110 A | | 1/1987 | Weinblatt | |
| 4,647,980 A | | 3/1987 | Steventon et al. | |
| 4,756,528 A | | 7/1988 | Umashankar | |
| 4,776,739 A | * | 10/1988 | Hamman | .................... 411/510 |
| 4,788,588 A | | 11/1988 | Tomita | |
| 4,866,515 A | | 9/1989 | Tagawa et al. | |
| RE33,423 E | * | 11/1990 | Lobanoff | ............... 297/188.06 |
| 4,983,951 A | | 1/1991 | Igarashi et al. | |

| | | | | |
|---|---|---|---|---|
| 5,267,775 A | | 12/1993 | Nguyen | |
| 5,292,174 A | | 3/1994 | Ohnuma | |
| 5,293,244 A | * | 3/1994 | Kawaguchi | ................. 348/789 |
| 5,311,302 A | | 5/1994 | Berry et al. | |
| 5,333,416 A | | 8/1994 | Harris et al. | |
| 5,359,349 A | | 10/1994 | Jambor et al. | |
| 5,507,556 A | * | 4/1996 | Dixon | ..................... 297/217.3 |
| 5,529,265 A | | 6/1996 | Sakurai | |
| 5,555,466 A | | 9/1996 | Scribner et al. | |
| 5,640,297 A | | 6/1997 | Labaze | |
| 5,713,633 A | | 2/1998 | Lu | |

(Continued)

FOREIGN PATENT DOCUMENTS

DE             3637772 A1 *   5/1988

(Continued)

*Primary Examiner*—Peter M. Cuomo
*Assistant Examiner*—Sarah B. McPartlin
(74) *Attorney, Agent, or Firm*—Knobbe, Martens, Olson &
Bear, LLP

(57)             **ABSTRACT**

A seat back video display assembly adapted to be positioned
in the back of a vehicle seat having an outer skin cover. In
one aspect, the assembly may comprise a receptacle member
having sidewalls and a back wall so as to define an opening
wherein the receptacle member is adapted to be positioned
in the back of the vehicle seat. In addition, the assembly may
further comprise a carrier member having sidewalls and a
back wall so as to define an opening, wherein the carrier
member includes at least one fastener that extends from the
back wall of the carrier member and engages with the back
wall of the receptacle member to secure the carrier member
into the receptacle member. Moreover, the assembly may
still further comprise a video display unit that is sized so as
to be positioned secured within the opening in the carrier
member, wherein the video display unit provides video
signals.

**24 Claims, 10 Drawing Sheets**



**US 7,040,697 B1**

Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D398,921 S | 9/1998 | Rosen |
| 5,842,715 A | 12/1998 | Jones |
| 6,024,027 A * | 2/2000 | Esmaili ....................... 109/50 |
| D434,400 S | 11/2000 | Rosen |
| 6,199,948 B1 | 3/2001 | Bush et al. |
| 6,216,927 B1 | 4/2001 | Meritt |
| 6,250,967 B1 | 6/2001 | Chu |
| 6,292,236 B1 | 9/2001 | Rosen |
| 6,339,455 B1 | 1/2002 | Allan et al. |
| 6,394,551 B1 | 5/2002 | Beukema |
| 6,406,334 B1 | 6/2002 | Chu |
| 6,409,242 B1 | 6/2002 | Chang |
| 6,480,243 B1 * | 11/2002 | Yamamoto .................. 348/836 |
| 6,669,285 B1 * | 12/2003 | Park et al. ............... 297/217.3 |
| 6,739,654 B1 * | 5/2004 | Shen et al. ............ 297/188.04 |
| 6,750,599 B1 * | 6/2004 | Tajima ....................... 313/292 |
| 6,755,491 B1 * | 6/2004 | McElheney ................. 312/242 |
| 2001/0008266 A1 | 7/2001 | Lambert |
| 2003/0025367 A1 | 2/2003 | Boudinot |
| 2004/0007906 A1 * | 1/2004 | Park et al. ............... 297/217.3 |
| 2004/0160096 A1 * | 8/2004 | Boudinot ................. 297/217.3 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| FR | 2764563 A1 | 12/1998 |
| JP | 01094048 A | 4/1989 |

* cited by examiner



FIG. 1A

**U.S. Patent**   May 9, 2006   Sheet 2 of 10   US 7,040,697 B1



FIG. 1B



FIG. 3A



FIG. 2

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 17 of 51



FIG. 3B

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 18 of 51



FIG. 4



FIG. 5

Case 2:09-cv-01794-DRH-ARL Document 1 Filed 02/27/09 Page 20 of 51



**FIG. 6B**



**FIG. 6A**

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 21 of 51



# FIG. 6C

Exhibit A  Page 20



FIG. 7



# FIG. 8

US 7,040,697 B1

**1**

## HEADREST HAVING AN INTEGRATED VIDEO SCREEN

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to motor vehicles and, in particular, to a headrest for motor vehicle seats having an integrated video screen mounted therein.

2. Description of the Related Art

Seat back video monitors are becoming increasingly popular in vehicles. Originally, these entertainment systems were largely confined to airplanes, however, recently, these systems have become much more popular with cars, trucks and SUVs. These entertainment systems provide the opportunity for passengers to view entertainment or educational video programs during long trips.

Typically, these systems have been installed as aftermarket products where the seat back is modified to accept the video display device, however, more of these systems are being installed as original equipment. Unfortunately, existing systems are often difficult and labor intensive to mount, particularly as an aftermarket product and are also subject to being dislodged.

Generally, the devices are mounted on the outer surface of the seat back where they protrude. In many vehicles, the space between seats and seat backs is limited, hence the protruding video display unit can inhibit the ability of passengers to easily get into and out of the vehicles. Moreover, passenger contact with the protruding video display screen may result in the screens being inadvertently dislodged.

A further difficulty with many existing video display unit designs is that they are not well secured to the seat. This is particularly the case for designs that allow the video display unit to pivot about an axis to improve the viewing angle of the passenger. One common way that these display units are installed is that a bucket is installed into the seat and the peripheral rim of the bucket includes openings that receive pivot posts that extend outward from the housing of the video display unit. The pivot posts are positioned within the openings and keepers or caps are then positioned in the openings to prevent the pivot posts from being removed from the openings.

In these designs, the keepers or caps are generally press fit and are exposed to the passenger. Hence, inadvertent contact may result in the keepers or caps being dislodged. Moreover, many of the passengers are children who, through boredom, may attempt to remove the keepers which can result in the video display being dislodged and potentially damaged.

Hence, from the foregoing, there is a need for a seat back video display system and method of mounting that provides more secure mounting of the video display unit. To this end, there is a need for an assembly that is less likely to be dislodged through inadvertent contact and does not have exposed detachable mounting components.

### SUMMARY OF THE INVENTION

The aforementioned needs may be satisfied by a seat back video display assembly adapted to be positioned in the back of a vehicle seat having an outer skin cover. In one aspect, the assembly may comprise a receptacle member having sidewalls and a back wall so as to define an opening, wherein the receptacle member is adapted to be positioned in the back of the vehicle seat. In addition the assembly may

**2**

further comprise a carrier member having sidewalls and a back wall so as to define an opening, wherein the carrier member includes at least one fastener that extends from the back wall of the carrier member and engages with the back wall of the receptacle member to secure the carrier member into the receptacle member, and a video display unit that is sized so as to be positioned secured within the opening in the carrier member, wherein the video display unit provides video signals.

Additionally, in one embodiment, the at least one fastener may comprise a plurality of fasteners that include a central member that extends outward from back wall of the carrier member and a plurality of flexible engagement members attached to the central member, wherein the flexible engagement members are deformable so as to allow insertion of the central member into the openings in the back wall of the receptacle member, and wherein the flexible engagement members are biased outward so as to inhibit removal of the central member from the openings in the back wall of the receptacle member. Also, the video display unit may be pivotally attached to the carrier member such that the plane of the video display unit can be adjusted by a user about a pivot point or axis, wherein the video display unit may be pivotable about a substantially horizontal pivot axis, a substantially vertical pivot axis, or pivot point that allows a continuous range of pivotal motion about the pivot point. Also, the openings may be positioned in the sidewalls of the receptacle member and the plurality of capture members are positioned within the openings, and wherein the plurality of capture members define a pointed surface that engages with the outer skin and inhibits removal of the outer skin from the opening defined by the receptacle member so as to securely fasten the outer skin to the receptacle member.

Additionally, in certain embodiments, the seat back video display assembly includes a screen cover that is dimensioned to cover the video display unit such that the screen cover can disengageably cover the screen of the video display unit to occlude the screen. The screen cover can include an impact attenuating material, a rigid protective layer, or any combination thereof.

The aforementioned needs may also be satisfied by a vehicle seat assembly having a seat back display. In one aspect, the vehicle seat assembly may comprise a vehicle seat adapted to receive an occupant during travel of a vehicle, the vehicle seat defining a seat back with an outer contour and a skin, and a receptacle member having sidewalls and a back wall to as to define an opening, wherein the receptacle member is mounted in the seat back of the vehicle seat such that the sidewalls are located at or below the outer contour of the seat back. In addition, the vehicle seat assembly may further comprise a video display unit mounted within the receptacle member, wherein the video display unit is generally planar with the outer plane being mounted at or below the outer contour of the seat back.

Moreover, the aforementioned needs may also be satisfied by a method of installing a video display unit into a seat back of a vehicle seat. In one embodiment, the method may comprise cutting an opening through an outer skin of the seat back, forming an aperture in the seat back, and positioning a receptacle in the aperture such that the receptacle is mounted at or below the level of the seat back. In addition, the method may comprise securing the video display unit to a carrier, and mounting the carrier into the receptacle such that an upper surface of the video display unit is mounted below the outer surface of the seat back. These and other objects and advantages of the present invention will become

US 7,040,697 B1

3

more fully apparent from the following description taken in conjunction with the accompanying drawings.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1A illustrates an adjustable headrest for a motor vehicle seat having an integrated video screen mounted therein.

FIG. 1B illustrates a fixed headrest for a motor vehicle seat having the integrated video screen of FIG. 1A mounted therein.

FIG. 2 illustrates a side view of the adjustable headrest shown in FIG. 1A having the integrated video screen mounted therein with a recessed orientation.

FIGS. 3A, 3B illustrate a cross-sectional view of the adjustable headrest shown in FIG. 1A having the integrated video screen mounted therein with a screen cover.

FIG. 4 illustrates a cross-sectional view of the integrated video screen being mounted to the headrest via a carrier receptacle, a carrier member, and a plurality of fasteners.

FIG. 5 illustrates an perspective view of the integrated video screen being mounted to the headrest via the carrier member and the plurality of fasteners of FIG. 4.

FIGS. 6A, 6B illustrate a perspective view of mounting the integrated video screen to the carrier member.

FIG. 6C illustrates a side view of mounting the integrated video screen to the carrier member via pivot member.

FIG. 7 illustrates a perspective view of mounting the integrated video screen to the adjustable headrest of FIG. 1A.

FIG. 8 illustrates a cross-sectional view of the video screen mounted to the headrest, wherein an outer skin from the headrest is secured to the carrier receptacle.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Reference will now be made to the drawings wherein like numerals refer to like parts throughout. A headrest for motor vehicle seats having an integrated video screen mounted therein in a flush or recessed manner will be described in greater detail herein below with reference to the drawings. In one aspect, it should be appreciated that the term motor vehicle seats refers to a plurality of generally known motor vehicles seats, such as those manufactured for automobiles, buses, boats, cars, semi-trucks, etc., wherein the following discussion can be similarly applied to these various types of motor vehicle seats without departing from scope of the present teachings. In addition, the following discussion refers to mounting the integrated video screen to the headrest of motor vehicle seats but may also be applied to other various component features of motor vehicle seats, such as the seat back, without departing from the scope of the present teachings.

FIG. 1A illustrates an adjustable headrest **100** for a first motor vehicle seat **102** having an integrated video screen **104** mounted therein. As illustrated in FIG. 1A, the adjustable headrest **100** is coupled to the seat **102** via posts **106** that extend therefrom and allow vertical adjustment of the adjustable headrest **100** with respect to the seat **102** in a generally known manner. FIG. 1B illustrates a fixed headrest **110** for a second motor vehicle seat **112** having the integrated video screen **104** mounted therein. In one embodiment, the video screen **104** is mounted within a headrest bun **106**, **116** that is adapted to receive the video screen **104** for firm attachment therein in a manner that will be described in greater detail herein below. In addition, as will be described

4

in greater detail herein below, the video screen **102** is mounted such that a front surface **120** of the video screen **104** is either flush or recessed from a contour **122** of the headrest **100**, **110**.

In one embodiment, the video screen **104** comprises a generally known LCD (liquid crystal display) monitor or terminal that can be electrically coupled to a video entertainment system so as to receive video signals therefrom for viewing of movies, television, internet web pages, video games, etc. As illustrated, the video screen **104** is generally rectangular in shape with the planar front surface **120** that is viewable by a user. In one aspect, it should be appreciated that the degree of recessed depth (with no depth comprising a flush mount) of the integrated video screen **104** and the manner in which the contour **122** of the seat **102**, **112** is shaped may be selected such that the shape (side view, for example) of the headrest **100**, **110** with the integrated video screen **104** mounted therein is generally similar to the shape of the headrest **100**, **110** without the integrated video screen **104**. Moreover, it should be appreciated that the motor vehicle seats **102**, **112** may comprise any one of a number of various types or models of generally known motor vehicle seats without departing from the scope of the present invention.

FIG. 2 illustrates a side view of the adjustable headrest **100** shown in FIG. 1A having the integrated video screen **104** mounted therein with a recessed orientation. It should be appreciated that the following discussion is with respect to the adjustable headrest **100** of FIG. 1A but may be similarly applied to the fixed headrest **110** of FIG. 1B without departing from the scope of the present teachings.

FIG. 2 further illustrates the side view shape or contour **122** of the headrest **100**. As illustrated in FIG. 2, the contour **122** of the headrest **100** is maintained due to the recessed orientation of the video screen **104** within the headrest bun **106**. In addition, an opening **130** is formed in a rear section **132** of the headrest **100** so as to define a substantially rectangular interior region **136** within the headrest bun **106** below an outer surface **134** of the headrest **100**. As further illustrated in FIG. 2, the video screen **104** can then be positioned adjacent the opening **130** so as to be firmly positioned within the interior region **136** of the headrest bun **106**. Moreover, the recessed orientation may be defined by a depth **138** between the front surface **120** of the video screen **104** and the outer surface **134** of the headrest **100**. The depth **138** therebetween may vary in magnitude depending on the thickness of the headrest bun **106** and/or the internal structural characteristics of the headrest **100**, which may vary with respect to the type or model of motor vehicle seat used. In one aspect, the depth **138** of the recessed orientation may comprise a magnitude of approximately zero so as to define a flush mounted video screen **104**, wherein the front surface **1120** of the video screen **104** is substantially aligned with the outer surface **134** of the headrest **100**.

FIG. 3A illustrates a cross-sectional view of the adjustable headrest **102** shown in FIGS. 1A having the integrated video screen **104** mounted therein with the recessed orientation shown in FIG. 2 and a screen cover **140**. In one embodiment, the screen cover **140** is coupled to the rear section **132** of the headrest **100** via a hinge **142** so as to overlie the video screen **104** and at least part of the opening **130** formed therein. The screen cover **140** may comprise generally rectangular shape and is oriented generally parallel to the front surface **120** of the video screen **104** so as to temporarily occlude the video screen **104**. In one aspect, as further illustrated in FIG. 3A, the screen cover **140** can be positioned adjacent the opening

US 7,040,697 B1

**5**

130 so as to substantially align with the outer surface **134** of the headrest **100** thus forming a flush mounting therewith. It should be appreciated that the screen cover **140** may be positioned within the opening **130** so as to be recessed with respect to the outer surface **134** of the headrest **100** without departing from the scope of the present teachings. Moreover, the screen cover **140** may comprise a rigid material, such as plastic, metal, etc. Alternatively, in another aspect, the screen cover **140** may comprise a piece or flap of material from an outer skin **230** (FIG. **8**) of the motor vehicle seat **102** that is attached to the headrest **100** adjacent the lower side of the video screen **104**.

In still another aspect, as illustrated in FIG. **3B**, the screen cover **140** may comprise an impact attenuating section **143** comprising a material such as foam, various types of padding, an air cushion, etc. so as to soften the force of an impact from an object. For example, during a car accident, a person's head may be propelled towards the screen cover **140**, wherein the impact attenuating material may soften the impact to the headrest **102** to thereby protect the person's head and the video screen **104** from damage.

Also, in one embodiment, the video screen **104** can be viewed by opening the screen cover **140** or temporarily occluded by closing the screen cover **140**. Hence, the screen cover **140** can be outwardly rotated about the hinge **142** in a first direction **144** to openly view the video screen **104**, or the screen cover **140** can be inwardly rotated about the hinge **142** in a second direction **144** opposite the first direction **144** to temporarily occlude the video screen **104**. Advantageously, the screen cover **104**, when closed, conceals the video screen **104** from view thus, in some situations, functions as a thief deterrent.

Moreover, in one aspect, the recessed configuration of the video screen **104** facilitates the manner in which the screen cover **140** may be deployed. For example, the video screen **104** may not physically interfere with the closing of the screen cover **140**. In addition, as illustrated in FIGS. **3A**, **3B**, the screen cover **140** is intended to "hide" the video screen **104** from outside observers, thereby reducing the probability that the video screen **104** will be a target of theft. As further illustrated in FIGS. **3A**, **3B**, the screen cover **140** may further comprise a means for engagement **144** that allows the screen cover **140** to remain in the "up" or closed configuration. In general, it should be appreciated that some possible means for achieving such an engagement include but are mot limited to magnetic strips, mechanical clips, velcro strips, and the like.

FIG. **4** illustrates a cross-sectional view of the integrated video screen **104** being mounted to the headrest **100** via a carrier receptacle **150**, a carrier member **160**, and first fasteners **170**. FIG. **5** illustrates a perspective view of the integrated video screen **104** being mounted to the headrest **100** via the carrier receptacle **150**, the carrier member **152**, and the first fasteners **170**. In one embodiment, the carrier receptacle **150** comprises a plurality of planar sidewalls **152** and a rear planar wall **154** that are joined together in a manner so as to form a substantially rectangular outer structure **156** having an inner recessed region **158** that is adapted to receive the carrier member **152** therein. Similarly, the carrier member **152** comprises a plurality of planar sidewalls **162** and a rear planar wall **164** that are joined together in a manner so as to form a substantially rectangular outer structure **166** having an inner recessed region **168** that is adapted to receive the video screen **104** therein.

As illustrated in FIG. **4**, the video screen **104** may be mounted within the carrier member **160** via side fasteners **180** (shown in FIGS. **6A**, **6B**) and then the carrier member

**6**

**152** is mounted within the carrier receptacle **150** via the first fasteners **170** so as to simplify the mounting of the video screen **104** to the headrest **100** including the headrest bun **106**. In one aspect, the first fasteners **170** may comprise a plurality of flexible engagement members **172** that extend therefrom so as to mechanically couple with a plurality of mounting apertures **174** (FIG. **5**) formed in the rear wall **154** of the carrier receptacle **150**. The first fasteners **170** may further comprise a central member **173** that extends outward from the rear wall **164** of the carrier member **160**. Also, the flexible engagement members **172** are attached to the central member **173**, wherein the flexible engagement members **172** are deformable so as to allow insertion of the central member **173** into the mounting apertures **174** in the rear wall **164** of the receptacle member **150**. Moreover, the flexible engagement members **170** are biased outward so as to inhibit removal of the central member **173** from the mounting apertures **174** in the rear wall **154** of the receptacle member **150**. In addition, the first fasteners **170** comprise a head **176** that abuts the rear wall **164** of the carrier member **152** and is positioned through a plurality of second apertures **178** formed in the rear wall **164** of the carrier member **152**.

Advantageously, the video screen **104** can be mounted to the headrest **100** via the carrier receptacle **150** and the carrier member **152** without using external fasteners that may be seen. Hence, the video screen **104** can be mounted to the headrest **100** in a more aesthetically appealing manner, wherein the front surface **120** of the video screen **104** recessed or flush mounted with respect to the outer surface **134** of the headrest **100**, and wherein the first and second fasteners **170**, **180** are concealed from view.

As illustrated in FIG. **5**, the sidewalls **152** of the carrier receptacle **150** each comprise at least one sidewall aperture **200** having at least one serrated tooth **202** protruding from an interior sidewall **204**. In one embodiment, the at least one serrated tooth **202** is triangular in shape having a pointed tip **206** that projects outward from the interior sidewall **204** in a horizontal manner. It should be appreciated that the serrated tooth **202** may comprise any one of a number of various shapes known in the art without departing from the scope of the present teachings. Additionally, as will be shown in FIG. **8**, the pointed tip **234** engages with the outer skin **230** (FIG. **8**) and inhibits removal of the outer skin **230** from the at least one sidewall aperture **200** formed in the carrier receptacle **150**. Advantageously, as will be described in greater detail herein below, the serrated tooth **200** allows outer skin from the motor vehicle seat **102**, **112** to be attached to the carrier receptacle **150** by wrapping the outer skin around the planar sidewalls **152** and into the recessed region **158** of the carrier receptacle **150** and then securing the outer skin to the serrated tooth **200**.

FIG. **6A** illustrates a perspective view of attaching the integrated video screen **104** to the carrier member **152** via the second fasteners **180**. In one embodiment, the planar sidewalls **162** of the carrier member **160** comprise pivot apertures **184** that allow the video display **104** to be mounted to the carrier member **160**. Also, the pivot apertures **184** are adapted to rotatably receive the second fasteners **180**. As illustrated in FIG. **6A**, the second fasteners **180** comprise a threaded region **186** that mechanically couples to threaded apertures **196** (FIG. **7**) formed in the video screen **104** in a generally known manner so as to be securely attached thereto. Moreover, the second fasteners **180** further comprise a head **182** and a smooth pivot region **188** interposed between the threaded region **186** and the head **182**.

In one aspect, the pivot region **188** of the second fastener **180** rotatably communicates with the pivot aperture **184** of

US 7,040,697 B1

7

the carrier member 160 to thereby allow the video screen 104 to pivot or tilt with respect to the carrier member 160 and/or the headrest 100 along a horizontal pivot axis 190 defined by the horizontally mounted second fasteners 180. Hence, the video screen 104 is pivotally attached to the carrier member 160 such that the plane of the video screen 104 can be adjusted with respect to the headrest 100 by a user about the defined horizontal pivot axis 190. Advantageously, the horizontal pivot axis 190 allows the video screen 104 to readily pivot when mounted to the headrest 100 to thereby allow greater positional flexibility during viewing of the video screen 104 by a user.

FIG. 6B further illustrates a perspective view of attaching the integrated video screen 104 to the carrier member 152 via the second fasteners 180. In one embodiment, as illustrated in FIG. 6B, the second fasteners 180 can be mounted vertically through the planar sidewalls 162 of the carrier member 160. The pivot region 188 of the vertically mounted second fasteners 180 rotatably communicates with the pivot aperture 184 of the carrier member 160 to thereby allow the video screen 104 to pivot or tilt side-to-side with respect to the carrier member 160 and/or the headrest 100 along a vertical pivot axis 191 defined by the vertically mounted second fasteners 180. Hence, the video screen 104 is pivotally attached to the carrier member 160 such that the plane 25 of the video screen 104 can be adjusted with respect to the headrest 100 by a user about the vertical pivot axis 191. Advantageously, the vertical pivot axis 191 allows the video screen 104 to readily pivot when mounted to the headrest 100 to thereby allow greater positional flexibility during 30 viewing of the video screen 104 by a user.

In one aspect, it should be appreciated that the second fasteners 180 may comprise generally known screws, such as sheet metal screws, without departing from the scope of the present invention. It should also be appreciated that the 35 pivot region 188 of the second fasteners 180 may be threaded in a manner such that the video screen 104 can still pivot with respect to the carrier member 150 without departing from the scope of the present invention.

FIG. 6C illustrates a view of attaching the integrated 40 video screen 104 to the carrier member 152 via a pivot member 240. In one embodiment, as illustrated in FIG. 6C, the pivot member 240 comprises a spherical ball 242 attached to the video screen 104 via a shaft 244 and a plate 246. The spherical ball 242 is positioned within a spherical 45 receptacle 248 formed in the rear wall 164 of the carrier member 160. As illustrated in FIG. 6C, the rear wall 164 of the carrier member 160 may be dimensioned so as to accommodate the spherical receptacle 248. In one aspect, the plate 246 of the pivot member 240 may be attached to the 50 video screen 104 using an adhesive, such as epoxy or glue, or fasteners, such as screws or bolts. In addition, the shaft 244 distally extends from the plate 246 towards the spherical receptacle 248 of the carrier member 160. Also, the shaft 244 and the spherical ball 242 may be formed as an integral part 55 of the plate 246 or may be formed separately and interconnected to the plate 246 via an adhesive or fasteners.

Moreover, once the pivot member 240 is attached to the video screen 104 in a manner as previously described, the spherical ball 242 of the pivot member 240 can be pressed 60 to fit within the spherical receptacle 248 formed in the rear wall 164 of the carrier member 160. In one aspect, the spherical ball 242 may be sized at least less than the size of the spherical receptacle 248 so as to allow rotational movement therein. Advantageously, the resulting interconnection 65 between the spherical ball 242 of the pivot member 240 and the spherical receptacle 248 of the carrier member 160

8

defines a pivot point 250 to thereby allow the video screen 104 to pivot, tilt, or rotate in a multi-directional manner with respect to the defined pivot point 250. Therefore, the defined pivot point 250 allows the video screen 104 to readily pivot when mounted to the headrest 100 to thereby allow greater positional flexibility during viewing of the video screen 104 by a user.

FIG. 7 illustrates a perspective view of mounting the integrated video screen 104 to the headrest 100 of FIG. 1A. In one embodiment, as illustrated in FIG. 7, the opening 130 is formed in the headrest bun 106 so as to define the substantially rectangular interior region 136 and to receive the carrier receptacle 150. The carrier receptacle 150 can then be positioned within the opening 130 so that the planar sidewalls 152 and the planar rear wall 154 abut the interior walls 226 of the mounting recess 136 formed in the headrest bun 106. In one embodiment, the carrier receptacle 150 can be secured to the headrest 100 via one or more third fasteners 220, such as screws, machine screws, sheet metal screws, etc. As illustrated in FIG. 7, the third fasteners 220 are positioned through rear wall apertures 222 formed in the rear wall 154 of the carrier receptacle 150 and coupled to rear mounting apertures 224 formed in a back wall 226 of the mounting recess 136 of the headrest bun 106. Advantageously, the third fasteners 220 can be securely attached to a structural component (not shown) of the headrest 100, such as an internal framework member of the headrest 100, so as to form a rigid attachment between the carrier receptacle 150 and the headrest 100.

In addition, the video screen 104 may be mounted to the carrier member 160 so as to pivot with respect thereto in a manner as previously described with reference to FIGS. 6A, 6B, 6C. Following, the carrier member 160 including the video screen 104 can then be mounted to the carrier receptacle 150 via the first fasteners 170 in a manner as previously described with reference to FIG. 4. Advantageously, this method of attaching the video screen 104 to the headrest 100 via the carrier receptacle 150, the carrier member 160, and the fasteners 170, 180 allows the video screen 104 to be securely mounted to the headrest 100 while providing a means for pivoting the video screen 104 with respect to the headrest 100 so as to improve the viewing range by a user.

FIG. 8 illustrates a cross-sectional view of the video screen 104 mounted to the headrest 100, wherein the outer skin 230 of the headrest 100 of the motor vehicle seat 102 is attached to the carrier receptacle 150 and the carrier member 160 with the video screen 104 mounted therein is mounted within the mounting recess 136 of the carrier receptacle 150. As is generally known, many motor vehicle car seats comprise the illustrated outer skin 230, such as fabric, leather, upholstery, vinyl, etc., that provides a outer surface 232 for a user to lean against or rest upon. In one aspect, when mounting the integrated video screen 104 into the headrest 100 of the motor vehicle seat 102, the outer skin 230 is adapted to accommodate the video screen 104 including the carrier receptacle 150. In some situations, one or more flaps 234 can be formed in the outer skin 230 and attached to the one or more serrated teeth 202 formed in the planar sidewalls 152 of the carrier receptacle 150.

As further illustrated in FIG. 8, the carrier receptacle 150 may be positioned within the mounting recess 136 formed in the headrest bun 106, and then the outer skin 230 is secured to the serrated teeth 202 via the flaps 234 formed therein by hooking the flaps 234 to one or more of the serrated teeth 202. Once the outer skin 230 is attached to the serrated teeth 202 via the flaps 234, the carrier member 160 is firmly pressed within the mounting recess 136 of the headrest bun

US 7,040,697 B1

**9**

106 so that the first fasteners **170** couple to the mounting apertures **174** formed in the rear wall **154** of the carrier receptacle **150**.

Advantageously, this interconnection between the carrier member **160** and carrier receptacle **150** provides a quick and easy means for mounting of the video screen **104** to the headrest **100**. In addition, the pressed fit of the outer skin between the carrier member **160** and the carrier receptacle **150** further secures the outer skin of the motor vehicle seat **102** to the carrier receptacle **150**. As a result, the outer skin is securely held to the carrier receptacle **150** via the one or more serrated teeth **202** formed in the planar sidewalls **152** of the carrier receptacle **150** and the pressed fit of the carrier member **160** within the mourning recess **136** of the carrier receptacle **150**.

Although the foregoing description has shown, described and pointed out the fundamental novel features of the invention, it will be understood that various omissions, substitutions, and changes in the form of the detail of the apparatus as illustrated, as well as the uses thereof, may be made by those skilled in the art, without departing from the spirit or scope of the present invention. Consequently, the scope of the invention should not be limited to the foregoing discussion, but should be defined by the appended claims.

What is claimed is:

**1**. A seat back video display assembly adapted to be positioned in a back of a vehicle seat having an outer skin, the assembly comprising:

a receptacle member having sidewalls and a back wall so as to define an opening wherein the receptacle member is adapted to be positioned in the back of the vehicle seat wherein the opening is facing away from the back of the vehicle seat when the receptacle member is positioned within the back of the vehicle seat and wherein the receptacle member includes at least one securing opening formed in the back wall of the receptacle member;

a carrier member having sidewalls and a back wall so as to define an opening, wherein the carrier member includes at least one fastener that is coupled to the back wall that extends from the back wall of the carrier member and engages with the at least one securing opening in the back wall of the receptacle member to secure the carrier member into the receptacle member and wherein the opening in the carrier member is facing away from the back of the vehicle seat when the carrier member is positioned within the receptacle member; and

a video display unit that is sized so as to be positioned secured within the opening in the carrier member and so substantially conceal the at least one fastener, wherein the video display unit provides video signals wherein the video display unit is pre-assembled into the carrier member so that the combined video display unit and the carrier member can be simultaneously secured within the receptacle member by positioning the carrier member in the receptacle member such that the back wall of the carrier member is flush with the back wall of the receptacle member and the at least one fastener of the carrier member is pushed through the at least one securing opening.

**2**. The assembly of claim **1**, wherein the receptacle member includes a plurality of openings positioned within the back wall that receive the fasteners of the carrier member.

**3**. The assembly of claim **2**, wherein the at least one fastener comprises a plurality of fasteners that include a

**10**

central member that extends outward from back wall of the carrier member and a plurality of flexible engagement members attached to the central member, wherein the flexible engagement members are deformable so as to allow insertion of the central member into the openings in the back wall of the receptacle member, and wherein the flexible engagement members are biased outward so as to inhibit removal of the central member from the openings in the back wall of the receptacle member.

**4**. The assembly of claim **1**, wherein the video display unit defines a plane and is pivotally attached to the carrier member such that the plane of the video display unit can be adjusted by a user about a pivot axis.

**5**. The assembly of claim **4**, wherein the video display unit is pivotable about a substantially horizontal axis.

**6**. The assembly of claim **4**, wherein at least a first and second fasteners are positioned through the carrier into the display unit so as to secure the video display unit to the carrier member prior to installation of the carrier into the receptacle member, and wherein the at least first and second fasteners engage with the video display unit so as to define a pivot axis.

**7**. The assembly of claim **1**, wherein the receptacle member includes an outer lip and a plurality of outer skin capture members that engage with the outer skin of the seat back following installation such that the outer skin is extended over the outer lip of the receptacle member and secured to the outer skin capture members.

**8**. The assembly of claim **7**, wherein openings are positioned in the sidewalls of the receptacle member and the plurality of capture members are positioned within the openings, and wherein the plurality of capture members define a pointed surface that engages with the outer skin and inhibits removal of the outer skin from the opening defined by the receptacle member.

**9**. The assembly of claim **1**, further comprising a screen cover that is dimensioned to cover the video display unit in a first configuration following installation into the seat back, and wherein the cover is selectively disengagable so as to allow visual access to the video display unit.

**10**. The assembly of claim **9**, wherein the cover includes an impact attenuating material.

**11**. The assembly of claim **9**, wherein the cover includes a generally rigid layer to provide physical protection of the video display unit.

**12**. A vehicle seat assembly having a seat back display, the assembly comprising:

a vehicle seat adapted to receive an occupant during travel of a vehicle, the vehicle seat defining a seat back with an outer contour and an outer skin;

a receptacle member having sidewalls and a back wall so as to define an opening, wherein the receptacle member is mounted in the seat back of the vehicle seat such that the sidewalls are located at or below the outer contour of the seat back and wherein the receptacle member includes at least one opening in the side walls and at least one outer skin capture member having a pointed surface positioned within the at least one opening such that the at least one outer skin capture member captures the outer skin of the seat back to inhibit removal of the outer skin from the at least one opening; and

a video display unit mounted within the receptacle member, wherein the video display unit is generally planar with an outer plane that is at or below the outer contour of the vehicle seat.

**13**. The assembly of claim **12**, further comprising a carrier member having sidewalls and a back wall so as to define an

US 7,040,697 B1

11

opening, wherein the carrier member includes at least one fastener that extends from the back wall of the carrier member and engages with the back wall of the receptacle member to secure the carrier member into the receptacle member, and wherein the video display unit is positioned within the carrier member.

**14**. The assembly of claim **13**, wherein the receptacle member includes a plurality of openings positioned within the back wall that receive the fasteners of the carrier member.

**15**. The assembly of claim **14**, wherein the at least one fastener comprises a plurality of fasteners that include a central member that extends outward from back wall of the carrier member and a plurality of flexible engagement members attached to the central member, wherein the flexible engagement members are deformable so as to allow insertion of the central member into the openings in the back wall of the receptacle member, and wherein the flexible engagement members are biased outward so as to inhibit removal of the central member from the openings in the back wall of the receptacle member.

**16**. The assembly of claim **13**, wherein the video display unit is pivotally attached to the carrier member such that the outer plane of the video display unit can be adjusted by a user about a pivot axis.

**17**. The assembly of claim **16**, wherein the video display unit is pivotable about a substantially horizontal axis.

**18**. The assembly of claim **16**, wherein at least a first and second fasteners are positioned through the carrier into the display unit so as to secure the video display unit to the

12

carrier member prior to installation of the carrier into the receptacle member, and wherein the at least first and second fasteners engage with the video display unit so as to define a pivot axis.

**19**. The assembly of claim **12**, further comprising a screen cover that is dimensioned to cover the video display unit in a first configuration following installation into the seat back, and wherein the cover is selectively disengagable so as to allow visual access to the video display unit.

**20**. The assembly of claim **19**, wherein the screen cover comprises at least a portion of the outer skin that is attached to the seat back adjacent a bottom side of the video display unit and a fastener assembly attached to the portion of outer skin and the seat back adjacent a top side of the video display unit such that the portion of outer skin can hide the video display unit from view.

**21**. The assembly of claim **19**, wherein the screen cover includes an impact attenuating material selected from the group consisting of foam, padding, and an air cushion.

**22**. The assembly of claim **19**, wherein the screen cover includes a generally rigid layer to provide physical protection of the video display unit.

**23**. The assembly of claim **12**, wherein the outer skin is selected from the group consisting of fabric, leather, upholstery, and vinyl.

**24**. The assembly of claim **12**, wherein the vehicle seat includes a head rest and the receptacle member is positioned within the head rest.

\* \* \* \* \*

# EXHIBIT B

US007407227B1

(12) **United States Patent**
Tuccinardi et al.

(10) **Patent No.:**      **US 7,407,227 B1**
(45) **Date of Patent:**            *Aug. 5, 2008

(54) **HEADREST HAVING AN INTEGRATED VIDEO SCREEN**

(75) Inventors: **Eugene M. Tuccinardi**, Temecula, CA (US); **Ernesto R. Haack**, Perris, CA (US); **Robert Murphy**, Lake Elsinore, CA (US); **Frank Barrese**, Temecula, CA (US); **Roel C. Espina**, Loma Linda, CA (US); **Jon A. Molo**, Ontario (CA); **Theo Zoetemelk**, Riverside, CA (US)

(73) Assignee: **Timely Innovations, L.P.**, Temecula, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **11/415,696**

(22) Filed: **May 2, 2006**

**Related U.S. Application Data**

(63) Continuation of application No. 10/395,870, filed on Mar. 20, 2003, now Pat. No. 7,040,697.

(51) **Int. Cl.**
*A47C 7/62* (2006.01)
(52) **U.S. Cl.** ............................... **297/217.3**; 297/188.04
(58) **Field of Classification Search** .............. 297/217.3, 297/188.04, 188.07, 408, 391; 5/643, 645
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

3,004,815 A    10/1961   O'Kain et al.

| | | |
|---|---|---|
| 4,584,603 A | 4/1986 | Harrison |
| 4,635,110 A | 1/1987 | Weinblatt |
| 4,647,980 A | 3/1987 | Steventon et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

DE        3637772 A1    5/1988

(Continued)

OTHER PUBLICATIONS

WO 02/074577. Jost, Gilbert. Headrest, Particularly for a Motor Vehicle Seat, Sep. 26, 2002.*

(Continued)

*Primary Examiner*—Sarah B McPartlin
(74) *Attorney, Agent, or Firm*—Knobbe, Martens, Olson & Bear, LLP

(57)                **ABSTRACT**

A seat back video display assembly adapted to be positioned in the back of a vehicle seat having an outer skin cover. In one aspect, the assembly may comprise a receptacle member having sidewalls and a back wall so as to define an opening wherein the receptacle member is adapted to be positioned in the back of the vehicle seat. In addition, the assembly may further comprise a carrier member having sidewalls and a back wall so as to define an opening, wherein the carrier member includes at least one fastener that extends from the back wall of the carrier member and engages with the back wall of the receptacle member to secure the carrier member into the receptacle member. Moreover, the assembly may still further comprise a video display unit that is sized so as to be positioned secured within the opening in the carrier member, wherein the video display unit provides video signals.

**14 Claims, 10 Drawing Sheets**



## US 7,407,227 B1

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,681,366 | A * | 7/1987 | Lobanoff ............... 297/188.06 |
| 4,756,528 | A | 7/1988 | Umashankar |
| 4,776,739 | A * | 10/1988 | Hamman ..................... 411/510 |
| 4,788,588 | A | 11/1988 | Tomita |
| 4,866,515 | A | 9/1989 | Tagawa et al. |
| RE33,423 | E | 11/1990 | Lobanoff |
| 4,983,951 | A | 1/1991 | Igarashi et al. |
| 5,267,775 | A * | 12/1993 | Nguyen ................... 297/217.3 |
| 5,292,174 | A | 3/1994 | Ohnuma |
| 5,293,244 | A | 3/1994 | Kawaguchi |
| 5,311,302 | A | 5/1994 | Berry et al. |
| 5,333,416 | A | 8/1994 | Harris et al. |
| 5,359,349 | A | 10/1994 | Jambor et al. |
| 5,507,556 | A * | 4/1996 | Dixon ...................... 297/217.3 |
| 5,529,265 | A | 6/1996 | Sakurai |
| 5,555,466 | A | 9/1996 | Scribner et al. |
| 5,640,297 | A | 6/1997 | Labaze |
| 5,713,633 | A | 2/1998 | Lu |
| D398,921 | S | 9/1998 | Rosen |
| 5,842,715 | A | 12/1998 | Jones |
| 5,953,784 | A * | 9/1999 | Suzuki et al. .............. 15/209.1 |
| 6,024,027 | A | 2/2000 | Esmaili |
| 6,055,478 | A | 4/2000 | Heron |
| D434,400 | S | 11/2000 | Rosen |
| 6,199,948 | B1 | 3/2001 | Bush et al. |
| 6,216,927 | B1 | 4/2001 | Meritt |
| 6,250,967 | B1 | 6/2001 | Chu |
| 6,292,236 | B1 | 9/2001 | Rosen |
| 6,305,046 | B1 * | 10/2001 | Kingry et al. ................ 15/231 |
| 6,339,455 | B1 | 1/2002 | Allan et al. |
| 6,394,551 | B1 | 5/2002 | Beukema |
| 6,406,334 | B2 | 6/2002 | Chu |
| 6,409,242 | B1 | 6/2002 | Chang |
| 6,480,243 | B2 | 11/2002 | Yamamoto |
| 6,669,285 | B1 * | 12/2003 | Park et al. ................ 297/217.3 |
| 6,739,654 | B1 | 5/2004 | Shen et al. |
| 6,750,599 | B2 | 6/2004 | Tajima |
| 6,755,491 | B2 | 6/2004 | McElheney |
| 6,762,929 | B2 | 7/2004 | Sawyer |
| 6,883,870 | B2 * | 4/2005 | Jost .............................. 297/391 |
| 7,036,879 | B2 | 5/2006 | Chang |
| 7,038,581 | B2 | 5/2006 | Kendall et al. |
| 7,040,697 | B1 * | 5/2006 | Tuccinardi et al. ....... 297/217.3 |
| 7,044,546 | B2 | 5/2006 | Chang |
| 2001/0008266 | A1 | 7/2001 | Lambert |
| 2003/0025367 | A1* | 2/2003 | Boudinot ................. 297/217.3 |
| 2004/0007906 | A1 | 1/2004 | Park et al. |
| 2004/0032543 | A1* | 2/2004 | Chang ........................ 348/837 |
| 2004/0160096 | A1 | 8/2004 | Boudinot |
| 2005/0099042 | A1 | 5/2005 | Vitito |
| 2005/0242638 | A1 | 11/2005 | Vitito |
| 2007/0001492 | A1 | 1/2007 | Chang |
| 2007/0102973 | A1 | 5/2007 | Vitito |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 19601582 A1 | 1/1996 |
| FR | 2764563 A1 | 12/1998 |
| JP | 01094048 A2 | 4/1989 |

### OTHER PUBLICATIONS

Office Action of Jul. 27, 2007 for U.S. Appl. No. 10/819,341.
Response to Office Action of Jul. 27, 2007 for U.S. Appl. No. 10/819,341.
Office Action of Jan. 31, 2007 for U.S. Appl. No. 11/415,918.
Response to Restriction Requirement of May 10, 2007 for U.S. Appl. No. 10/819,341.
Restriction Requirement of May 10, 2007 for U.S. Appl. No. 10/819,341.
Response to Office Action of Jan. 31, 2007 for U.S. Appl. No. 11/415,918.
Final Office Action of Jul. 30, 2007 for U.S. Appl. No. 11/415,918.
RCE and Response to Final Office Action of Jul. 30, 2007 for U.S. Appl. No. 11/415,918.
Restriction Requirement of Jul. 19, 2004 for U.S. Appl. No. 10/395,870.
Response to Restriction Requirement of Jul. 19, 2004 for U.S. Appl. No. 10/395,870.
Office Action of Sep. 27, 2004 for U.S. Appl. No. 10/395,870.
Response to Office Action of Sep. 27, 2004 for U.S. Appl. No. 10/395,870.
Final Office Action of May 3, 2005 for U.S. Appl. No. 10/395,870.
RCE & Response to Final Action of May 3, 2005 for U.S. Appl. No. 10/395,870.
Notice of Allowance of Dec. 6, 2005 for U.S. Appl. No. 10/395,870.

* cited by examiner



FIG. 1A



FIG. 1B

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 35 of 51



FIG. 3A



FIG. 2

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 36 of 51



# FIG. 3B

Exhibit *B* Page 34

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 37 of 51



FIG. 4

Exhibit _B_ Page _35_

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 38 of 51



FIG. 5



FIG. 6B



FIG. 6A

Exhibit B  Page 37

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 40 of 51



# FIG. 6C

Exhibit B   Page 38

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 41 of 51



FIG. 7

Case 2:09-cv-01794-DRH-ARL   Document 1   Filed 02/27/09   Page 42 of 51



FIG. 8

Exhibit _B_  Page _40_

US 7,407,227 B1

**1**

## HEADREST HAVING AN INTEGRATED VIDEO SCREEN

### RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 10/395,870 filed Mar. 20, 2003 now U.S. Pat. No. 7,040, 697, entitled "HEADREST HAVING AN INTEGRATED VIDEO SCREEN," which is hereby incorporated by reference herein in its entirety; and this application is related to U.S. application Ser. No. 10/819,341 filed Apr. 5, 2004, entitled "HEADREST/HEAD RESTRAINT HAVING AN INTEGRATED VIDEO SCREEN," and to U.S. application Ser. No. 11/415,918 filed concurrently with this application, entitled "HEADREST HAVING AN INTEGRATED VIDEO SCREEN," which is a divisional of the above-identified Ser. No. 10/395,870 application.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to motor vehicles and, in particular, to a headrest for motor vehicle seats having an integrated video screen mounted therein.

2. Description of the Related Art

Seat back video monitors are becoming increasingly popular in vehicles. Originally, these entertainment systems were largely confined to airplanes, however, recently, these systems have become much more popular with cars, trucks and SUVs. These entertainment systems provide the opportunity for passengers to view entertainment or educational video programs during long trips.

Typically, these systems have been installed as aftermarket products where the seat back is modified to accept the video display device, however, more of these systems are being installed as original equipment. Unfortunately, existing systems are often difficult and labor intensive to mount, particularly as an aftermarket product and are also subject to being dislodged.

Generally, the devices are mounted on the outer surface of the seat back where they protrude. In many vehicles, the space between seats and seat backs is limited, hence the protruding video display unit can inhibit the ability of passengers to easily get into and out of the vehicles. Moreover, passenger contact with the protruding video display screen may result in the screens being inadvertently dislodged.

A further difficulty with many existing video display unit designs is that they are not well secured to the seat. This is particularly the case for designs that allow the video display unit to pivot about an axis to improve the viewing angle of the passenger. One common way that these display units are installed is that a bucket is installed into the seat and the peripheral rim of the bucket includes openings that receive pivot posts that extend outward from the housing of the display unit. The pivot posts are positioned within the openings and keepers or caps are then positioned in the openings to prevent the pivot posts from being removed from the openings.

In these designs, the keepers or caps are generally press fit and are exposed to the passenger. Hence, inadvertent contact may result in the keepers or caps being dislodged. Moreover, many of the passengers are children who, through boredom, may attempt to remove the keepers which can result in the video display being dislodged and potentially damaged.

Hence, from the foregoing, there is a need for a seat back video display system and method of mounting that provides more secure mounting of the video display unit. To this end,

**2**

there is a need for an assembly that is less likely to be dislodged through inadvertent contact and does not have exposed detachable mounting components.

### SUMMARY OF THE INVENTION

The aforementioned needs may be satisfied by a seat back video display assembly adapted to be positioned in the back of a vehicle seat having an outer skin cover. In one aspect, the assembly may comprise a receptacle member having sidewalls and a back wall so as to define an opening, wherein the receptacle member is adapted to be positioned in the back of the vehicle seat. In addition the assembly may further comprise a carrier member having sidewalls and a back wall so as to define an opening, wherein the carrier member includes at least one fastener that extends from the back wall of the carrier member and engages with the back wall of the receptacle member to secure the carrier member into the receptacle member, and a video display unit that is sized so as to be positioned secured within the opening in the carrier member, wherein the video display unit provides video signals.

Additionally, in one embodiment, the at least one fastener may comprise a plurality of fasteners that include a central member that extends outward from back wall of the carrier member and a plurality of flexible engagement members attached to the central member, wherein the flexible engagement members are deformable so as to allow insertion of the central member into the openings in the back wall of the receptacle member, and wherein the flexible engagement members are biased outward so as to inhibit removal of the central member from the openings in the back wall of the receptacle member. Also, the video display unit may be pivotally attached to the carrier member such that the plane of the video display unit can be adjusted by a user about a pivot point or axis, wherein the video display unit may be pivotable about a substantially horizontal pivot axis, a substantially vertical pivot axis, or pivot point that allows a continuous range of pivotal motion about the pivot point. Also, the openings may be positioned in the sidewalls of the receptacle member and the plurality of capture members are positioned within the openings, and wherein the plurality of capture members define a pointed surface that engages with the outer skin and inhibits removal of the outer skin from the opening defined by the receptacle member so as to securely fasten the outer skin to the receptacle member.

Additionally, in certain embodiments, the seat back video display assembly includes a screen cover that is dimensioned to cover the video display unit such that the screen cover can disengageably cover the screen of the video display unit to occlude the screen. The screen cover can include an impact attenuating material, a rigid protective layer, or any combination thereof.

The aforementioned needs may also be satisfied by a vehicle seat assembly having a seat back display. In one aspect, the vehicle seat assembly may comprise a vehicle seat adapted to receive an occupant during travel of a vehicle, the vehicle seat defining a seat back with an outer contour and a skin, and a receptacle member having sidewalls and a back wall so as to define an opening, wherein the receptacle member is mounted in the seat back of the vehicle seat such that the sidewalls are located at or below the outer contour of the seat back. In addition, the vehicle seat assembly may further comprise a video display unit mounted within the receptacle member, wherein the video display unit is generally planar with the outer plane being mounted at or below the outer contour of the seat back.

Exhibit B   Page 41

US 7,407,227 B1

3

Moreover, the aforementioned needs may also be satisfied by a method of installing a video display unit into a seat back of a vehicle seat. In one embodiment, the method may comprise cutting an opening through an outer skin of the seat back, forming an aperture in the seat back, and positioning a receptacle in the aperture such that the receptacle is mounted at or below the level of the seat back. In addition, the method may comprise securing the video display unit to a carrier, and mounting the carrier into the receptacle such that an upper surface of the video display unit is mounted below the outer surface of the seat back. These and other objects and advantages of the present invention will become more fully apparent from the following description taken in conjunction with the accompanying drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1A illustrates an adjustable headrest for a motor vehicle seat having an integrated video screen mounted therein.

FIG. 1B illustrates a fixed headrest for a motor vehicle seat having the integrated video screen of FIG. 1A mounted therein.

FIG. 2 illustrates a side view of the adjustable headrest shown in FIG. 1A having the integrated video screen mounted therein with a recessed orientation.

FIGS. 3A, 3B illustrate a cross-sectional view of the adjustable headrest shown in FIG. 1A having the integrated video screen mounted therein with a screen cover.

FIG. 4 illustrates a cross-sectional view of the integrated video screen being mounted to the headrest via a carrier receptacle, a carrier member, and a plurality of fasteners.

FIG. 5 illustrates an perspective view of the integrated video screen being mounted to the headrest via the carrier member and the plurality of fasteners of FIG. 4.

FIGS. 6A, 6B illustrate a perspective view of mounting the integrated video screen to the carrier member.

FIG. 6C illustrates a side view of mounting the integrated video screen to the carrier member via pivot member.

FIG. 7 illustrates a perspective view of mounting the integrated video screen to the adjustable headrest of FIG. 1A.

FIG. 8 illustrates a cross-sectional view of the video screen mounted to the headrest, wherein an outer skin from the headrest is secured to the carrier receptacle.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Reference will now be made to the drawings wherein like numerals refer to like parts throughout. A headrest for motor vehicle seats having an integrated video screen mounted therein in a flush or recessed manner will be described in greater detail herein below with reference to the drawings. In one aspect, it should be appreciated that the term motor vehicle seats refers to a plurality of generally known motor vehicles seats, such as those manufactured for automobiles, buses, boats, cars, semi-trucks, etc., wherein the following discussion can be similarly applied to these various types of motor vehicle seats without departing from scope of the present teachings. In addition, the following discussion refers to mounting the integrated video screen to the headrest of motor vehicle seats but may also be applied to other various component features of motor vehicle seats, such as the seat back, without departing from the scope of the present teachings.

FIG. 1A illustrates an adjustable headrest 100 for a first motor vehicle seat 102 having an integrated video screen 104

4

mounted therein. As illustrated in FIG. 1A, the adjustable headrest 100 is coupled to the seat 102 via posts 107 that extend therefrom and allow vertical adjustment of the adjustable headrest 100 with respect to the seat 102 in a generally known manner. FIG. 1B illustrates a fixed headrest 110 for a second motor vehicle seat 112 having the integrated video screen 104 mounted therein. In one embodiment, the video screen 104 is mounted within a headrest bun 106, 116 that is adapted to receive the video screen 104 for firm attachment therein in a manner that will be described in greater detail herein below. In addition, as will be described in greater detail herein below, the video screen 102 is mounted such that a front surface 120 of the video screen 104 is either flush or recessed from a contour 122 of the headrest 100, 110.

In one embodiment, the video screen 104 comprises a generally known LCD (liquid crystal display) monitor or terminal that can be electrically coupled to a video entertainment system so as to receive video signals therefrom for viewing of movies, television, internet web pages, video games, etc. As illustrated, the video screen 104 is generally rectangular in shape with the planar front surface 120 that is viewable by a user. In one aspect, it should be appreciated that the degree of recessed depth (with no depth comprising a flush mount) of the integrated video screen 104 and the manner in which the contour 122 of the seat 102, 112 is shaped may be selected such that the shape (side view, for example) of the headrest 100, 110 with the integrated video screen 104 mounted therein is generally similar to the shape of the headrest 100, 110 without the integrated video screen 104. Moreover, it should be appreciated that the motor vehicle seats 102, 112 may comprise any one of a number of various types or models of generally known motor vehicle seats without departing from the scope of the present invention.

FIG. 2 illustrates a side view of the adjustable headrest 100 shown in FIG. 1A having the integrated video screen 104 mounted therein with a recessed orientation. It should be appreciated that the following discussion is with respect to the adjustable headrest 100 of FIG. 1A but may be similarly applied to the fixed headrest 110 of FIG. 1B without departing from the scope of the present teachings.

FIG. 2 further illustrates the side view shape or contour 122 of the headrest 100. As illustrated in FIG. 2, the contour 122 of the headrest 100 is maintained due to the recessed orientation of the video screen 104 within the headrest bun 106. In addition, an opening 130 is formed in a rear section 132 of the headrest 100 so as to define a substantially rectangular interior region 136 within the headrest bun 106 below an outer surface 134 of the headrest 100. As further illustrated in FIG. 2, the video screen 104 can then be positioned adjacent the opening 130 so as to be firmly positioned within the interior region 136 of the headrest bun 106. Moreover, the recessed orientation may be defined by a depth 138 between the front surface 120 of the video screen 104 and the outer surface 134 of the headrest 100. The depth 138 therebetween may vary in magnitude depending on the thickness of the headrest bun 106 and/or the internal structural characteristics of the headrest 100, which may vary with respect to the type or model of motor vehicle seat used. In one aspect, the depth 138 of the recessed orientation may comprise a magnitude of approximately zero so as to define a flush mounted video screen 104, wherein the front surface 1120 of the video screen 104 is substantially aligned with the outer surface 134 of the headrest 100.

FIG. 3A illustrates a cross-sectional view of the adjustable headrest 102 shown in FIG. 1A having the integrated video screen 104 mounted therein with the recessed orientation shown in FIG. 2 and a screen cover 140. In one embodiment,

US 7,407,227 B1

5

the screen cover **140** is coupled to the rear section **132** of the headrest **100** via a hinge **142** so as to overlie the video screen **104** and at least part of the opening **130** formed therein. The screen cover **140** may comprise generally rectangular shape and is oriented generally parallel to the front surface **120** of the video screen **104** so as to temporarily occlude the video screen **104**. In one aspect, as further illustrated in FIG. 3A, the screen cover **140** can be positioned adjacent the opening **130** so as to substantially align with the outer surface **134** of the headrest **100** thus forming a flush mounting therewith. It should be appreciated that the screen cover **140** may be positioned within the opening **130** so as to be recessed with respect to the outer surface **134** of the headrest **100** without departing from the scope of the present teachings. Moreover, the screen cover **140** may comprise a rigid material, such as plastic, metal, etc. Alternatively, in another aspect, the screen cover **140** may comprise a piece or flap of material from an outer skin **230** (FIG. **8**) of the motor vehicle seat **102** that is attached to the headrest **100** adjacent the lower side of the video screen **104**.

In still another aspect, as illustrated in FIG. 3B, the screen cover **140** may comprise an impact attenuating section **143** comprising a material such as foam, various types of padding, an air cushion, etc. so as to soften the force of an impact from an object. For example, during a car accident, a person's head may be propelled towards the screen cover **140**, wherein the impact attenuating material may soften the impact to the headrest **102** to thereby protect the person's head and the video screen **104** from damage.

Also, in one embodiment, the video screen **104** can be viewed by opening the screen cover **140** or temporarily occluded by closing the screen cover **140**. Hence, the screen cover **140** can be outwardly rotated about the hinge **142** in a first direction **144** to openly view the video screen **104**, or the screen cover **140** can be inwardly rotated about the hinge **142** in a second direction **144** opposite the first direction **144** to temporarily occlude the video screen **104**. Advantageously, the screen cover **104**, when closed, conceals the video screen **104** from view thus, in some situations, functions as a thief deterrent.

Moreover, in one aspect, the recessed configuration of the video screen **104** facilitates the manner in which the screen cover **140** may be deployed. For example, the video screen **104** may not physically interfere with the closing of the screen cover **140**. In addition, as illustrated in FIGS. 3A, 3B, the screen cover **140** is intended to "hide" the video screen **104** from outside observers, thereby reducing the probability that the video screen **104** will be a target of theft. As further illustrated in FIGS. 3A, 3B, the screen cover **140** may further comprise a means for engagement **147** that allows the screen cover **140** to remain in the "up" or closed configuration. In general, it should be appreciated that some possible means for achieving such an engagement include but are mot limited to magnetic strips, mechanical clips, velcro strips, and the like.

FIG. 4 illustrates a cross-sectional view of the integrated video screen **104** being mounted to the headrest **100** via a carrier receptacle **150**, a carrier member **160**, and first fasteners **170**. FIG. 5 illustrates a perspective view of the integrated video screen **104** being mounted to the headrest **100** via the carrier receptacle **150**, the carrier member **152**, and the first fasteners **170**. In one embodiment, the carrier receptacle **150** comprises a plurality of planar sidewalls **152** and a rear planar wall **154** that are joined together in a manner so as to form a substantially rectangular outer structure **156** having an inner recessed region **158** that is adapted to receive the carrier member **152** therein. Similarly, the carrier member **152** comprises a plurality of planar sidewalls **162** and a rear planar wall

6

**164** that are joined together in a manner so as to form a substantially rectangular outer structure **166** having an inner recessed region **168** that is adapted to receive the video screen **104** therein.

As illustrated in FIG. **4**, the video screen **104** may be mounted within the carrier member **160** via side fasteners **180** (shown in FIGS. 6A, 6B) and then the carrier member **152** is mounted within the carrier receptacle **150** via the first fasteners **170** so as to simplify the mounting of the video screen **104** to the headrest **100** including the headrest bun **106**. In one aspect, the first fasteners **170** may comprise a plurality of flexible engagement members **172** that extend therefrom so as to mechanically couple with a plurality of mounting apertures **174** (FIG. 5) formed in the rear wall **154** of the carrier receptacle **150**. The first fasteners **170** may further comprise a central member **173** that extends outward from the rear wall **164** of the carrier member **160**. Also, the flexible engagement members **172** are attached to the central member **173**, wherein the flexible engagement members **172** are deformable so as to allow insertion of the central member **173** into the mounting apertures **174** in the rear wall **164** of the carrier receptacle **150**. Moreover, the flexible engagement members **170** are biased outward so as to inhibit removal of the central member **173** from the mounting apertures **174** in the rear wall **154** of the carrier receptacle **150**. In addition, the first fasteners **170** comprise a head **176** that abuts the rear wall **164** of the carrier member **152** and is positioned through a plurality of second apertures **178** formed in the rear wall **164** of the carrier member **152**.

Advantageously, the video screen **104** can be mounted to the headrest **100** via the carrier receptacle **150** and the carrier member **152** without using external fasteners that may be seen. Hence, the video screen **104** can be mounted to the headrest **100** in a more aesthetically appealing manner, wherein the front surface **120** of the video screen **104** recessed or flush mounted with respect to the outer surface **134** of the headrest **100**, and wherein the first and second fasteners **170**, **180** are concealed from view.

As illustrated in FIG. **5**, the sidewalls **152** of the carrier receptacle **150** each comprise at least one sidewall aperture **200** having at least one serrated tooth **202** protruding from an interior sidewall **204**. In one embodiment, the at least one serrated tooth **202** is triangular in shape having a pointed tip **206** that projects outward from the interior sidewall **204** in a horizontal manner. It should be appreciated that the serrated tooth **202** may comprise any one of a number of various shapes known in the art without departing from the scope of the present teachings. Additionally, as will be shown in FIG. **8**, the pointed tip **234** engages with the outer skin **230** (FIG. **8**) and inhibits removal of the outer skin **230** from the at least one sidewall aperture **200** formed in the carrier receptacle **150**. Advantageously, as will be described in greater detail herein below, the serrated tooth **200** allows outer skin from the motor vehicle seat **102**, **112** to be attached to the carrier receptacle **150** by wrapping the outer skin around the planar sidewalls **152** and into the recessed region **158** of the carrier receptacle **150** and then securing the outer skin to the serrated tooth **200**.

FIG. 6A illustrates a perspective view of attaching the integrated video screen **104** to the carrier member **152** via the second fasteners **180**. In one embodiment, the planar sidewalls **162** of the carrier member **160** comprise pivot apertures **184** that allow the video display **104** to be mounted to the carrier member **160**. Also, the pivot apertures **184** are adapted to rotatably receive the second fasteners **180**. As illustrated in FIG. 6A, the second fasteners **180** comprise a threaded region **186** that mechanically couples to threaded apertures **196** (FIG. 7) formed in the video screen **104** in a generally known

US 7,407,227 B1

7

manner so as to be securely attached thereto. Moreover, the second fasteners 180 further comprise a head 182 and a smooth pivot region 188 interposed between the threaded region and the head 182.

In one aspect, the pivot region 188 of the second fastener 180 rotatably communicates with the pivot aperture 184 of the carrier member 160 to thereby allow the video screen 104 to pivot or tilt with respect to the carrier member 160 and/or the headrest 100 along a horizontal pivot axis 190 defined by the horizontally mounted second fasteners 180. Hence, the video screen 104 is pivotally attached to the carrier member 160 such that the plane of the video screen 104 can be adjusted with respect to the headrest 100 by a user about the defined horizontal pivot axis 190. Advantageously, the horizontal pivot axis 190 allows the video screen 104 to readily pivot when mounted to the headrest 100 to thereby allow greater positional flexibility during viewing of the video screen 104 by a user.

FIG. 6B further illustrates a perspective view of attaching the integrated video screen 104 to the carrier member 152 via the second fasteners 180. In one embodiment, as illustrated in FIG. 6B, the second fasteners 180 can be mounted vertically through the planar sidewalls 162 of the carrier member 160. The pivot region 188 of the vertically mounted second fasteners 180 rotatably communicates with the pivot aperture 184 of the carrier member 160 to thereby allow the video screen 104 to pivot or tilt side-to-side with respect to the carrier member 160 and/or the headrest 100 along a vertical pivot axis 191 defined by the vertically mounted second fasteners 180. Hence, the video screen 104 is pivotally attached to the carrier member 160 such that the plane of the video screen 104 can be adjusted with respect to the headrest 100 by a user about the vertical pivot axis 191. Advantageously, the vertical pivot axis 191 allows the video screen 104 to readily pivot when mounted to the headrest 100 to thereby allow greater positional flexibility during viewing of the video screen 104 by a user.

In one aspect, it should be appreciated that the second fasteners 180 may comprise generally known screws, such as sheet metal screws, without departing from the scope of the present invention. It should also be appreciated that the pivot region 188 of the second fasteners 180 may be threaded in a manner such that the video screen 104 can still pivot with respect to the carrier member 150 without departing from the scope of the present invention.

FIG. 6C illustrates a view of attaching the integrated video screen 104 to the carrier member 152 via a pivot member 240. In one embodiment, as illustrated in FIG. 6C, the pivot member 240 comprises a spherical ball 242 attached to the video screen 104 via a shaft 244 and a plate 246. The spherical ball 242 is positioned within a spherical receptacle 248 formed in the rear wall 164 of the carrier member 160. As illustrated in FIG. 6C, the rear wall 164 of the carrier member 160 may be dimensioned so as to accommodate the spherical receptacle 248. In one aspect, the plate 246 of the pivot member 240 may be attached to the video screen 104 using an adhesive, such as epoxy or glue, or fasteners, such as screws or bolts. In addition, the shaft 244 distally extends from the plate 246 towards the spherical receptacle 248 of the carrier member 160. Also, the shaft 244 and the spherical ball 242 may be formed as an integral part of the plate 246 or may be formed separately and interconnected to the plate 246 via an adhesive or fasteners.

Moreover, once the pivot member 240 is attached to the video screen 104 in a manner as previously described, the spherical ball 242 of the pivot member 240 can be pressed to fit within the spherical receptacle 248 formed in the rear wall 164 of the carrier member 160. In one aspect, the spherical ball 242 may be sized at least less than the size of the spherical receptacle 248 so as to allow rotational movement therein. Advantageously, the resulting interconnection between the

8

spherical ball 242 of the pivot member 240 and the spherical receptacle 248 of the carrier member 160 defines a pivot point 250 to thereby allow the video screen 104 to pivot, tilt, or rotate in a multi-directional manner with respect to the defined pivot point 250. Therefore, the defined pivot point 250 allows the video screen 104 to readily pivot when mounted to the headrest 100 to thereby allow greater positional flexibility during viewing of the video screen 104 by a user.

FIG. 7 illustrates a perspective view of mounting the integrated video screen 104 to the headrest 100 of FIG. 1A. In one embodiment, as illustrated in FIG. 7, the opening 130 is formed in the headrest bun 106 so as to define the substantially rectangular interior region 136 and to receive the carrier receptacle 150. The carrier receptacle 150 can then be positioned within the opening 130 so that the planar sidewalls 152 and the planar rear wall 154 abut the interior walls 226 of the mounting recess 136 formed in the headrest bun 106. In one embodiment, the carrier receptacle 150 can be secured to the headrest 100 via one or more third fasteners 220, such as screws, machine screws, sheet metal screws, etc. As illustrated in FIG. 7, the third fasteners 220 are positioned through rear wall apertures 222 formed in the rear wall 154 of the carrier receptacle 150 and coupled to rear mounting apertures 224 formed in a back wall 226 of the mounting recess 136 of the headrest bun 106. Advantageously, the third fasteners 220 can be securely attached to a structural component (not shown) of the headrest 100, such as an internal framework member of the headrest 100, so as to form a rigid attachment between the carrier receptacle 150 and the headrest 100.

In addition, the video screen 104 may be mounted to the carrier member 160 so as to pivot with respect thereto in a manner as previously described with reference to FIGS. 6A, 6B, 6C. Following, the carrier member 160 including the video screen 104 can then be mounted to the carrier receptacle 150 via the first fasteners 170 in a manner as previously described with reference to FIG. 4. Advantageously, this method of attaching the video screen 104 to the headrest 100 via the carrier receptacle 150, the carrier member 160, and the fasteners 170, 180 allows the video screen 104 to be securely mounted to the headrest 100 while providing a means for pivoting the video screen 104 with respect to the headrest 100 so as to improve the viewing range by a user.

FIG. 8 illustrates a cross-sectional view of the video screen 104 mounted to the headrest 100, wherein the outer skin 230 of the headrest 100 of the motor vehicle seat 102 is attached to the carrier receptacle 150 and the carrier member 160 with the video screen 104 mounted therein is mounted within the mounting recess 136 of the carrier receptacle 150. As is generally known, many motor vehicle car seats comprise the illustrated outer skin 230, such as fabric, leather, upholstery, vinyl, etc., that provides a outer surface 232 for a user to lean against or rest upon. In one aspect, when mounting the integrated video screen 104 into the headrest 100 of the motor vehicle seat 102, the outer skin 230 is adapted to accommodate the video screen 104 including the carrier receptacle 150. In some situations, one or more flaps 234 can be formed in the outer skin 230 and attached to the one or more serrated teeth 202 formed in the planar sidewalls 152 of the carrier receptacle 150.

As further illustrated in FIG. 8, the carrier receptacle 150 may be positioned within the mounting recess 136 formed in the headrest bun 106, and then the outer skin 230 is secured to the serrated teeth 202 via the flaps 234 formed therein by hooking the flaps 234 to one or more of the serrated teeth 202. Once the outer skin 230 is attached to the serrated teeth 202 via the flaps 234, the carrier member 160 is firmly pressed within the mounting recess 136 of the headrest bun 106 so that the first fasteners 170 couple to the mounting apertures 174 formed in the rear wall 154 of the carrier receptacle 150.

US 7,407,227 B1

9

Advantageously, this interconnection between the carrier member 160 and carrier receptacle 150 provides a quick and easy means for mounting of the video screen 104 to the headrest 100. In addition, the pressed fit of the outer skin between the carrier member 160 and the carrier receptacle 150 further secures the outer skin of the motor vehicle seat 102 to the carrier receptacle 150. As a result, the outer skin is securely held to the carrier receptacle 150 via the one or more serrated teeth 202 formed in the planar sidewalls 152 of the carrier receptacle 150 and the pressed fit of the carrier member 160 within the mourning recess 136 of the carrier receptacle 150.

Although the foregoing description has shown, described and pointed out the fundamental novel features of the invention, it will be understood that various omissions, substitutions, and changes in the form of the detail of the apparatus as illustrated, as well as the uses thereof, may be made by those skilled in the art, without departing from the spirit or scope of the present invention. Consequently, the scope of the invention should not be limited to the foregoing discussion, but should be defined by the appended claims.

What is claimed is:

1. A headrest assembly for a vehicle seat, the assembly comprising:

a receptacle member having a plurality of sidewalls and a back wall so as to define an opening wherein the receptacle member is adapted to be positioned in a back of the vehicle seat wherein the opening is facing away from the back of the vehicle seat when the receptacle member is positioned within the back of the vehicle seat and wherein the back wall of the receptacle member defines at least one securing aperture;

a carrier member having a plurality of sidewalls and a back wall so as to define an opening, wherein the opening in the carrier member is facing away from the back of the vehicle seat when the carrier member is positioned within the receptacle member and wherein the back wall of the carrier member defines at least one securing aperture;

an outer skin having edges that extend into the opening of the receptacle member and attached to at least some of the plurality of sidewalls of the receptacle member and wherein the edges of the outer skin are substantially concealed when the carrier member is positioned within the opening of the receptacle member;

at least one fastener that extends through the at least one securing aperture of the carrier member and engages with the at least one securing aperture of the receptacle member to allow securing of the carrier member in the opening of the receptacle member;

a video display unit that is sized so as to be positioned within the opening in the carrier member and substantially conceal the at least one fastener when in a viewing orientation.

2. The assembly of claim 1, wherein the at least one fastener comprises a plurality of fasteners that include a central member dimensioned to extend through the securing aperture of the carrier member and a plurality of flexible engagement members attached to the central member, wherein the flexible engagement members are deformable so as to allow insertion of the central member into the corresponding securing aperture of the receptacle member, and wherein the flexible engagement members are biased outward so as to inhibit removal of the central member from the apertures of the receptacle member.

3. The assembly of claim 1, wherein the video display unit defines a plane and is pivotally attached to the carrier member such that the plane of the video display unit can be adjusted by a user about a pivot axis.

10

4. The assembly of claim 3, wherein the video display unit is pivotable about a substantially horizontal axis.

5. The assembly of claim 3, wherein first and second pivot member coupled to the video display unit are positioned through the carrier member so as to define the pivot axis and pivotally secure the video display unit to the carrier member.

6. The assembly of claim 1, wherein the receptacle member includes an outer lip and a plurality of outer skin capture members that engage with the outer skin such that the outer skin is extended over the outer lip of the receptacle member and secured to the outer skin capture members.

7. The assembly of claim 6, wherein the plurality of capture members define a pointed surface that engages with the outer skin and inhibits removal of the outer skin from the opening defined by the receptacle member.

8. The assembly of claim 1, further comprising a screen cover that is dimensioned to cover the video display unit, and wherein the cover is selectively disengagable so as to allow visual access to the video display unit.

9. The assembly of claim 8, wherein the cover includes an impact attenuating material.

10. The assembly of claim 8, wherein the cover includes a generally rigid layer to provide physical protection of the video display unit.

11. The assembly of claim 1, wherein the receptacle member has four sidewalls.

12. The assembly of claim 1, wherein the carrier member has four sidewalls.

13. The assembly of claim 1, wherein the edges of the outer skin are secured to each of the plurality of sidewalls.

14. A headrest assembly for a vehicle seat, the assembly comprising:

a receptacle member having a plurality of sidewalls that are joined to a back wall so as to define an opening wherein the receptacle member is adapted to be positioned in a back of the vehicle seat wherein the opening is facing away from the back of the vehicle seat when the receptacle member is positioned within the back of the vehicle seat and wherein the back wall of the receptacle member defines at least one securing aperture;

a carrier member having a plurality of sidewalls and a back wall so as to define an opening, wherein the opening in the carrier member is facing away from the back of the vehicle seat when the carrier member is positioned within the receptacle member and wherein the back wall of the carrier member defines at least one securing aperture;

an outer skin having edges that extend into the opening of the receptacle member and secured to at least some of the plurality of sidewalls of the receptacle member, and wherein the edges of the outer skin are substantially concealed when the carrier member is positioned within the opening of the receptacle member;

at least one fastener that extends through the at least one securing aperture of the carrier member and engages with the at least one securing aperture of the receptacle member to allow securing of the carrier member in the opening of the receptacle member;

a video display unit that is sized so as to be positioned within the opening in the carrier member and substantially conceal the at least one fastener when in a viewing orientation.

* * * * *

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV09- 1437 JFW (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TMI PRODUCTS, INC. <br><br> PLAINTIFF(S) <br><br> v. <br><br> AUDIOVOX CORPORATION and <br> AUDIOVOX ELECTRONICS CORPORATION <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV09-01437 JFW (JCx) <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S):  Audiovox Corporation and Audiovox Electronics Corporation

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _David B. Ritchie_____, whose address is _Nixon Peabody LLP, 200 Page Mill Road, Suite 200, Palo Alto, CA 94306-2022_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  FEB 27 2009

By: ___LA'REE HORN_____
           Deputy Clerk
        (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| TMI PRODUCTS, INC | AUDIOVOX CORPORATION and AUDIOVOX ELECTRONICS CORPORATION |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>David. B. Ritchie (112018); Margarita Gevondyan (245536)<br>NIXON PEABODY LLP<br>200 Page Mill Road, Suite 200, Palo Alto, CA 94306-2022 (650) 320-7747 | Attorneys (If Known)<br><br>Not yet known |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT: $** To be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☑ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _____ CV09-01437

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| TMI PRODUCTS, INC.: LOS ANGELES, RIVERSIDE, ORANGE, VENTURA, SANTA BARBARA, SAN LUIS OBISPO, & SAN BERNARDINO COUNTIES, CALIFORNIA. | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| UK. _CALIFORNIA_ | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES, RIVERSIDE, ORANGE, VENTURA, SANTA BARBARA, SAN LUIS OBISPO, & SAN BERNARDINO COUNTIES, CALIFORNIA AS TO SOME CLAIMS, OTHER CLAIMS UNKNOWN. | UNKNOWN |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  2/27/09

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |